and Williams. Mr. Chivari, we'll begin with you. Good morning, and may it please the Court. My name is Matthew Chivari, and I represent one of the appellants in this case, Mr. Falandis Russell. I'd like to reserve the two minutes of my time to offer rebuttal if I have it to reserve. First, the District Court clearly erred by determining that Mr. Russell was competent to stand trial. The evidentiary record before this Court shows this in two key respects. First, the District Court disregarded Dr. Jacobs' assessment of Mr. Russell, and second, the suggestion that Mr. Russell's level of competency was improved in any fashion while at FMC Butner is absurd and fundamentally conflicts with the evidentiary record before this Court. We look first at Dr. Jacobs' testimony. It seems to me that you are just arguing the Court should have given different weight to Dr. Jacobs' testimony, because the District Court very carefully went through her conclusions and indicated why it was not giving her opinion the same weight as the other two doctors. To say that the Court, I think you said categorically disregarded in your briefing, just seems like you're asking us to weigh it differently. Your Honor, in that regard, the quantity does not quality. Volume does not beget value. While it is true that the District Court did take time to go through Dr. Jacobs' assessment, that is not the same as considering. But the Court did consider it. It just found it had been rebutted by the evidence. She had not looked at school records, had not looked at the Social Security records. The Court went through pretty carefully assessing her reports and saying why it didn't put the same weight into them. So Dr. Jacobs did look at the school records. I misspoke. It was the Social Security records. Yes, but even those made a clear, consistent record, a clear history of Mr. Russell's well-documented learning disabilities that included, most importantly, an IQ of only 54, cognitive deficits that followed him throughout school. This was unrebutted and agreed to by Drs. Muchen and Dinwiddie. When we're getting, though, determinations of disability and then two determinations of malingering, don't we have to be deferential in those circumstances? Yes, Your Honor, but the distinction between malingering and cognitive ability, cognitive ability has the ability to be empirically supported, and there are limitations. Even Dr. Muchen admitted that there are severe limitations to an expert's capacity to measure and document malingering, and also admitted that there's no data in any learned treatise, journals, or anything else that an expert in her field would regularly rely on that would allow them to indicate those comparative percentages. So simply put, the malingering is not supported by empirical data. So in that regard, again, the district court certainly went through and made reference to Dr. Jaco's findings, but based on the determination, it's clear that those were disregarded. It's not simply a matter of differing weight. What about the testimony at the hearing about Mr. Russell's different behavior towards different people when he went to the institutional facility? A fair point, Justice. What the district court... Judge. Judge Lee. Don't give me a promotion. Pardon me. The district court did raise concerns about that in looking at specifically Dr. Dinwiddie's testimony, and said specifically that Dr. Dinwiddie cannot really say how Mr. Russell's conduct during his interview connects with the tests administered by Drs. Jaco and Muchen. So that is more anecdotal, and again, Dr. Dinwiddie importantly did not retain notes, did not conduct any tests to allow the district court, or this court, or any court for that matter, to empirically weigh or measure this concept of purported malingering. What about the testimony? Go ahead. What about the testimony that Dr. Dinwiddie had suggested that a symptom of being cognitively impaired to the point where you couldn't testify or couldn't stand trial was that you shuffled your feet, which is not such an example of it, or not such a symptom of it, and then your client, after he heard Dr. Dinwiddie say this, which he intentionally said in his presence, started shuffling his feet and doing exactly what Dinwiddie had planted there to say was indicative of psychopathology? That's pretty strong evidence. I would respectfully disagree that we have an anecdotal report of that incident. Dr. Dinwiddie, of course, also testified that he was not qualified to test Mr. Russell's IQ, even if he had wanted to. But that's separate than testing IQ. Are you saying we can't rely on Dr. Dinwiddie's testimony that he observed your client shuffling his feet after saying this? I think in the balance of all the evidence presented to the district court and that weighed by this court on balance, I think even in spite of that, it does still lend towards the court disregarding and not simply weighing greater the two experts. And in my remaining time, it's true the district court's procedural error when it comes to Mr. Russell's unreasonable, excessive, and above guidelines term. This court cannot have confidence that the district court meaningfully considered Mr. Russell's principal arguments in mitigation. The court here, again, paid some service to the mitigating factors of Mr. Russell's unrefuted cognitive impairments. But because that did not rise to the threshold of competence, whatever articulated mitigating value the district court afforded these arguments was clearly controverted by a corresponding aggravating value assigned for malingering. Simply put, he was punished for purported malingering. Thank you, Mr. Shabari. Thank you. Thank you. Mr. Hillis, you can hear us and see us? Yes, Your Honor. Very good. I'll recognize you. Thank you. May it please the court, counsel, my name is Daniel Hillis. I'm with the Federal Public Defender's Office and I represent Terrence Williams. Mr. Williams is here on one challenge supervised release condition and the government agrees that a remand is necessary because the condition is overbroad and vague. However, we have additional concerns that we want to amplify to perhaps spare a second round of appeal should the same condition be effectively imposed. So our concerns reach beyond the ambiguity and overbreadth. Those are surely some of our concerns here. But the over, excuse me, the non-delegation of authority in violation of Article 3 remains a concern of ours as does the compulsory government speech. Mr. Hillis, if condition number 13 is modified to require Mr. Williams to consent to notification by the probation officer rather than to notify a third party himself, would that satisfy your concerns? It would not, Judge, because that's functionally the same as compulsory speech in the first instance by requiring my client to make a disclosure of a risk that he doesn't agree that he poses. So I don't think there's any functional difference between making my client disclose it versus requiring him to allow the probation office to disclose it. What if it requires his consent, though? I think that's semantics. It'd be the same thing. So we think that we just need to remove my client from that equation, not require him to do anything, not to consent to a disclosure. Our remaining concern, though, is the non-delegation. And so I would turn briefly to that and allowing the probation officer, who's not an Article 3 judge, some authority to determine an non-delegation argument. And I would rely on those principles to support our non-delegation argument. With that, I reserve the balance of my time for rebuttal. Thank you, Mr. Hillis. Mr. Mauer, we'll move to you now for argument on behalf of the appellee. Good morning, Your Honors, and may it please the court. The district court's finding that Philandus Russell was competent to stand trial was not clearly erroneous. Two independent experts, Dr. Marina Muchen and Dr. Steven Dinwiddie, each determined that Russell purposely exaggerated his intellectual disabilities, and that in reality, he adequately understood the nature and consequences of the proceedings and could assist in his own defense. Although Dr. Melissa Jaco believed that Russell was incompetent, her finding was against the weight of expert opinion. More importantly, the district court found that Dr. Jaco failed to properly consider whether Russell was malingering, and that her opinions were based on an incomplete assessment of the record. Due to the severe flaws in Dr. Jaco's examinations, the district court properly discredited her findings in favor of Dr. Muchen and Dr. Dinwiddie. Mr. Mauer, there's a lot of focus in the testimony and the ruling on malingering, but what is the strongest evidence of Mr. Russell's capacity to understand the proceedings and communicate with his lawyers? Both Dr. Muchen and Dr. Dinwiddie met personally with Mr. Russell. They went through his school records, as well as his social security disability records, and through those examinations and those assessments, they determined that he could communicate effectively, that he could advocate for his own needs, sometimes strongly, and that he could understand things communicated to him with assistance. And those examinations and observations were further reinforced by the district court's review of Mr. Russell's recorded jail calls, which reinforced all the same points. Russell now tries to mischaracterize the court's discrediting of Dr. Jaco as a complete disregard for her opinion, but the record contradicts that claim. It was the district court who appointed Dr. Jaco to serve as Russell's first competency evaluator. The court then considered not one but two of her psychological examinations. It listened to her sworn testimony during the competency hearing, and then devoted nearly five pages of its final competency ruling to rebutting her analysis. Thus, far from ignoring Dr. Jaco, the court merely found her opinion less persuasive, which it was empowered to do in the exercise of its sound discretion. Russell now seeks to relitigate that assessment, but credibility decisions can virtually never be clear error. The district court observed all three experts testify during a two-day hearing, and it was therefore best positioned to assess and weigh that testimony in light of the entire record. Turning briefly to Russell's sentencing, the district court also properly considered his mental impairments in crafting its judgment. During the sentencing hearing, the district court acknowledged Russell's cognitive defects three separate times, and even expressly stated and described them as Russell's, quote, most significant piece of mitigation. That recognition was not undermined by its simultaneous belief that his malingering was itself aggravating. Such an approach was neither contradictory nor ambiguous, and instead it was rather straightforward. The court found Russell's legitimate impairments extenuating, but his intentional exaggeration of those impairments as the opposite. Both sides of that coin were relevant to Russell's history and characteristics, and therefore proper considerations under 3553A. When the court issued its sentence, it thoroughly explained its reasoning under the 3553A factors. In particular, it emphasized the seriousness of the offense, including the large number of robberies, the violent and destructive nature of those robberies, the high monetary loss, and the impact on more than 40 individual victims. That explanation both allows for meaningful appellate review and promotes the perception of fair sentencing. Finally, regarding Terrence Williams, the government has conceded that as it is presently constructed, Special Condition 13 is unduly vague, particularly as it relates to the terms risk and another person. We therefore agree that a limited remand is appropriate to allow the court to remedy that deficiency. Is there something we can remedy here rather than remanding, or is I think remand is appropriate here, Your Honor. It's up to the district court to articulate what specific risks it felt it needed to address by imposing the condition. The court can certainly provide guidance on particular language that it might find helpful in avoiding future appellate issues like this one, but I think ultimately, the decision to impose the condition and the rationale for it should fall to the district court. Therefore, pending the court's questions, the government respectfully requests that you affirm the district court's judgment as it relates to Defendant Russell, and you issue the limited remand as it relates to Defendant Williams. Thank you, Mr. Maurer. Thank you. Mr. Shabir, we'll give you a minute in rebuttal, and then we'll finish with Mr. Hillis. Thank you, Judge. Very briefly, as to the question pertaining to the focus on malingering, but what evidence is there of Mr. Russell's ability to support his counsel in his own defense, Dr. Jaco testified that Mr. Russell had only a rudimentary understanding of the roles of key courtroom participants. He was uncertain as to his own attorney's role. He had a lack of understanding of what would be helpful to attorneys during the preparation of his defense, the role of the prosecutor, as well as his ability to identify his rights as a criminal defendant. Compare that to the testimony of Dr. Muchen, who, again, did not retain his notes. He had no record of what questions he posed to Mr. Russell regarding the legal system, and there was a decided lack of any evidence that would allow the district court to have made an empirical decision. For that reason, we think that the district court erred in that regard, and I see that I'm out of time. Thank you, Mr. Shabari. Thank you. Mr. Hillis, we'll turn to you. Thank you. I would note that the condition that's at issue here has fallen out of disfavor. We don't see it often, and that may be an indication of the wisdom of running with the herd for district courts across the circuit not to delve back into this condition that appears to be disfavored for all of its ambiguity, over-breath, non-delegation, concerns of these types, not to mention compulsory government speech. That is the highlight of the rebuttal. The other thing I'm remiss for not mentioning earlier is I do appreciate the court allowing me to appear remotely, so thank you all. You're welcome. Thank you, Mr. Hillis. Thank you, Mr. Shabari. Thank you, Mr. Mauer. The case will be taken under advisement.